By the Court,
Hitchcock, Judge.
The law under which the premises in controversy were sold, is the act of June 30, 1822, entitled *156 •“ an act for the remission of penalties and for the sale of lands for taxes,” 2 Ch. St. 121Í3. This statute authorized the sale of such lands •only as had been taxed prior to 1820, and the taxes remained unpaid. From 1815, up to 1820, there had- been no sale of land for taxes, but such sales had been from time to time suspended. In the mean time, taxes, penalties, and interest had been accumulating, where the same were not paid, and necessity seemed to require of the general assembly, some special legislation upon the subject. In 1820, a very * material change was made in the system of taxation, but the law then enacted made no ample provision, as to the disposition of taxes which had been previously assessed upon land, and remained unpaid. Consequently the act of January 20, 1822, was passed. The first section prescribes “ that all taxes, interest, and penalties which have accrued, and became due upon lands, and remain unpaid, prior to the year 1820, shall be collected in the manner hereinafter prescribed.”
In the second section it is provided that if the arrearages of such taxes, together with the interest, shall be paid previous to the 10th ■day of December then next, in.such case all penalties which accrued previous to 1820, shall be remitted.
In the fifth section it is made the duty of the county auditor, after having given notice as required in the section, “ to appear at the court •of Common Pleas of his proper county, according to the terms of said notice, and demand a judgment, in all eases where he shall be satisfied that such taxes, penalties, and interest may have been correctly and legally charged, and still remain unpaid.” This judgment is to be •demanded in the name of the state of Ohio. Any person or persons interested are authorized to appear and contest the claim, and pro•vision is made that there may be a trial by jury. But “if no person appears to contest the claim of the state as aforesaid, it shall bo the duty of said court, on motion, to render judgment for the amount appearing to be due, with costs that may have accrued, which shall be recorded by the clerk of said court, from which judgment there shall he no appeal or writ of error to a superior court.”
By the sixth section it is made the duty of the clerk of the court, to “ make out a list of such judgment or judgments under the seal of said court, with an order of court for the sale of such lands, to satisfy such judgm.ent or judgments, and deliver the same to said auditor, who shall proceed to sell the lands charged with said judgments,” in the ■manner subsequently pointed out in the law.
After having received the list, the auditor, having given notice of *157 the time and place of sale, by advertisement in a newspaper having general circulation in the county where the lands lie, for thirty days, is required to sell the lands or so much thereof as may be necessary, to such person or persons as will pay the judgment and costs, for the-least number of acres.
Having made sale, it is required of the auditor that he return a list of such sales, “and if on examination said court shall be satisfied * that the sales have been made according to the provisions of this act, they shall order the. auditor to make a deed to the purchaser for the tract so sold,” etc.; and in the ninth section it is declared, that “the said deed shall convey to the purchaser all the title, either in law or equity, which the owner had in the lands described in said deed, at any time after the taxes, interest, and penalty, or cither, for which the same was sold, began to accrue, and shall be received in all courts in this state and elsewhere, as prima facie evidence of good title to-the lands therein mentioned, nor shall the title conveyed by such deed be invalidated or affected by the reversal of such judgment, or any error therein, or by any error in any proceedings previous to the rendition of such judgment, relating to the charging or collecting of" taxes on such land, or the obtaining of such judgment.”
It may be thought that the provisions of this law are somewhat severe, and we have been warned by counsel of the necessity of giving it a rigid and strict construction. In giving it a construction, I apprehend, however, that we must be governed by the ordinary rules in such cases. Because it is penal in some of its provisions, we can not therefore distort its evident meaning, and thus defeat the intention of the legislature. It must be recollected that this law was not intended to operate upon those who had punctually contributed to the support of the government, but upon those who had pertinaciously withheld suMi contributions — upon those who had long neglected and refused to pay the taxes levied upon their lands for the general welfare. And it, ought, too, to be recollected, that previous and up to the time of the passage of this law, an opinion was prevalent that a sale of lands for taxes could not be sustained in this state, an opinion which had gained' much strength in consequence of the decisions of our courts upon the subject. The prevalence of this opinion was well known to the members of the general assembly, and there can be no doubt, that this fact had much influence in the enactment of the law. This was one of the-great evils intended to be remedied.
It is true that in carrying out the provisions of this law, individuals-. *158 may be deprived of their lands without receiving an adequate compensation. But to avoid this evil, if an evil, under the circumstances, it may be called, it would be highly improper for this court to disregard those provisions. The legislature having said that from a judgment of the court of Corrm.w. Pleas under this act, “ there shall be no appeal or writ of error to Tiny superior court,” it is beyond the power of this ■court to sustain appeal or writ of error. And the same legislature having prescribed that the title conveyed by the ^auditor’s deed shall not “ be invalidated or affected by the reversal of such judgment or any error therein, or by any error in any proceedings previous to the rendition of any such judgment, relating to the charging or collecting of taws on such lands, or the obtaining of such judgment,” it is our duty to give effect to this requisition.
In giving’ the judgment this effect, however, no new principle is introduced. It is in substantial accordance with the effect given to a judgment rendered according to the ordinary course of the common law. Th 0 reversal of such judgment will not defeat the title of a purchaser under execution, which title accrued previous to the reversal. And the judgment itself can not, so long as it remains in force, be impepehed collaterally, unless it be absolutely void. But it must be remembered, that a judgment rendered by a court not having jurisdiction of the subject matter, is absolutely void ; and under such judgment no title can be acquired. This principle will apply as well to judgments under this statute, as to those rendered in other eases.
In order to sustain the title of a purchaser under this statute, it is necessary in the first place that there should be a judgment, rendered by a court having jurisdiction of the case. If there be such a judgment, the court enquiring into the validity of the title, are precluded from going behind it. In its effects it is conclusive upon the rights of .■all concerned. No informality, no irregularity, no error can vitiate it.
No “error in any proceedings previous” to its rendition, “ relating to the charging or collecting of taxes on such lands, or the obtaining ■of any such judgment,” can defeat the title acquired under it.
In the second place, it is necessary that there should have been a list of judgments certified by the clerk of the court in which the judgments were rendered, under the seal of the court, directed to the auditor of the county, with an order from the court to sell the lands therein specified in satisfaction of the judgments ; which list vests as .-much power in the county auditor to sell, as would a levari facias in *159 the sheriff of the county, with this difference, however, that the sheriff can not sell without appraisement, while the auditor can.
In the third place, it is necessary that there should have been a sale, in pursuance of notice previously given, as required in the law, and a return of this sale to the court by which it was ordered, for its examination and confirmation.
In the fourth place, there must have been a confirmation and approval of t.his sale by the court, and an order entered, that a deed be executed to the purchaser.
*And in the fifth place, this deed must have been executed.
The first question for determination, then, in the case under consideration, is, whether there was a judgment.
The evidence introduced on the trial shows, that at the December term of the court .of Common Pleas, 1823, the auditor appeared and moved the court for judgment in the name of the state of Ohio, against John Wilkins, for the sum of six hundred and twelve dollars and seventy-one cents, being the tax, interest, and penalty, on one thousand nine hundred and fifty acres of land, being all the north half of section two, township two, range eleven, except fifty acres, situate in the north west corner of said section. At the same time, and in the same motion was included an application for similar judgments against nine ty-two other individuals, for the taxes, penalties, and interest due on as many separate and distinct tracts of land. The auditor at the same time proved to the court, that the notice required by law had been given, and the persons against whom the motion was made, were three times severally called, and defaulted. “ Thereupon it is considered by the court, that judgment be rendered, and judgment accordingly is rendered against the said several persons aforesaid, for the tax, interest, and penalties, so by them respectively due, and owing as aforesaid, together with costs taxed at $ .” And it was further ordered by the court, that the auditor peoceed to sell the aforesaid several tracts of land, or so much thereof, as will satisfy the several judgments aforesaid, in pursuance of the statute.
Here is a judgment and order of sale. The judgment is informal and perhaps erroneous, but is it void ? There is no controversy but that the court had jurisdiction of the subject matter, and that legal notice that application for judgment would be made, had been given. It is a judgment in favor of the state of Ohio, agrinst the individuals named in the record, or rather there are separate judgments in favor •of the state of Ohio, against those individuals respectively. Several *160 objections are made to its validity, however, which it is proper to consider.
It is objected that it is not rendered for any specific sum. The-sum due for taxes, interest, and penalties, from Wilkins, is specified! in the motion, and for the sums so due and owing, the judgment is rendered. Taking the whole record together, there can be n'o mistake as to the amount. It is as certain as it would have been, had that amount been specified in the judgment itself. It is the same in effect as would be the judgment upon a verdict of a jury assessing- * damages, that the plaintiff recover the damages so assessed, without repeating the amount in the formal part of the judgment itself. The verdict and the judgment taken together, show the amount' recovered.
Again it is objected, that this is nota judgment against Wilkins-alone, but a joint judgment against him and several others. That, there is some informality in this respect is apparent. It would have been better, had the record shewn a separate motion and judgment in-each particular case. But there is not a joint judgment against several individuals. .The record shows that the motion made was for judgments against several individuals, for the sums from them respectively due, and that judgments were rendered accordingly. There-were separate judgments against the separate delinquents.
Again it is objected, that the amount of costs is not specified in the judgment, but left in blank. If this be a defect, which we are by no-means prepared to admit, it is at most but an error, and as before shown, errors do not vitiate.
After a careful examination, we have come to the conclusion, that here was a judgment within the meaning and intent of the statute, and such a judgment as is sufficient to protect the title of a purchaser under it.
The second enquiry is, whether a list of judgments was made out and certified under the seal of the court, by tbe clerk, and delivered to-the auditor, directing him to sell, &c. Upon this point there is no controversy. Such list was made out, and in that list, the judgment against Wilkins is stated to be for taxes, interest, and penalties, amounting to six hundred and twelve dollars and seventy-one cents, and costs taxed at one dollar and seventy five cents.
The next enquiry is, whether the land was sold in pursuance of notice given according to law, and was a return of this sale made to the court of Common Pleas for confirmation. That the land was sold; *161 and a return of the sale made, is not controverted. And the court, whose duty it was to examine the whole matter say, they are “ satisfied that the sales had been made according to the provisions of the act,” under which they were made. And this is sufficient to satisfy this court that notice must have been given.
It is objected to the sale, however, that the sum charged upon the land, and for which it was sold, was six hundred and fourteen dollars and forty-six cents, whereas the judgment rendered was only for six hundred and twelve dollars and seventy-one cents. The judgment was for the tax, interest, and penalty, amounting to six hundred and twelve dollars and seventy-one cents, together with costs taxed at * $ In the order of sale, the costs are included, taxed at one dollar and seventy five cents, making the whole six hundred and fourteen dollars and seventy-six cents, and for this the land was sold. It is said that the clerk had no right to tax these costs, and thus include them in the order. We are not prepared to assent to this position of counsel. Asa matter of fact, we know that judgments are ordinarily entered in this way, and the costs are subsequently taxed by the clerks and included in executions. Admitting the practice to have been originally incorrect, it has prevailed too long to be now interfered with. But by our system it seems to be the duty of the clerk to tax all cost, and for this he is entitled by the statute to receive a compensation. It would seem, too, that this is to be done after judgment, as the statute provides, “ that for drawing cost bill, after final judgment or decree,” the clerk shall receive thirty five cents. 29 O. L. 222. Let this be as it may, however, so long as it does not appear that the costs exceed the amount, which ought to be included in the judgment, we do not feel disposed to declare a sale void on this account.
The fourth enquiry is, whether tbe sale made by the auditor was approved and confirmed by the court, and a deed ordered to be made to the purchaser. That the sale was thus approved and confirmed, and a deed ordered to be made tr «he purchaser in pursuance thereof, is apparent from the evidence in the case, and it is equally clear that a deed was made in pursuance of the order of court. ■
Upon the whole, we are satisfied that the' court mistook the law in the instructions given to the jury, and a new trial must be awarded, the costs to abide the event of the suit.
New trial awarded.